UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURAINE G.,[1]<br><br>    Plaintiff<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 2:18-cv-03972-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Lauraine G. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 8 and 10] and briefs addressing disputed issues in the case [Dkt. 16 ("Pl. Br."), Dkt. 18 ("Def. Br."), Dkt. 19 ("Reply Br.")]. The matter is now ready for decision. For the reasons discussed below, the Court finds that this matter should be affirmed.

---

[1]     In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

Plaintiff filed an application for DIB alleging disability since April 1, 2013, based primarily on arthritis, hypertension, and cervical spondylosis. [Dkt. 18, Administrative Record ("AR") 183, 314.] Plaintiff's application was denied initially, on reconsideration, and after a hearing before Administrative Law Judge ("ALJ") Roger Winkleman [AR 1-6, 16-26.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. §§ 416.920(b)-(g)(1). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2013, the alleged onset date. [AR 18 (citing 20 C.F.R. § 416.971).] At step two, the ALJ found that Plaintiff suffered from status post cerebrovascular accident and hypertension. [AR 18.] The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [AR 19.]

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work except she must avoid concentrated exposure to hazards such as machinery and heights. [AR 19.] Applying this RFC, the ALJ found at step four that Plaintiff could perform her past relevant work as a quality assurance analyst and a records manager and, thus, she is not disabled. [AR 25]. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. [AR 1-6.] This appeal followed.

## III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (internal citation omitted).

"Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV. DISCUSSION

### A. The ALJ's Step Two Finding

Plaintiff argues that the ALJ erred at step two of the sequential evaluation process by finding her cervical spondylosis[2] was not a severe impairment. At step two, a claimant must make a "threshold showing" that (1) he has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *Bowen v. Yuckert*, 482 U.S. 137, 146-47, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). Thus, the burden of proof is on the claimant to establish a medically

---

[2] Cervical spondylosis is degeneration of the bones in the neck (vertebrae) and the disks between them, putting pressure on (compressing) the spinal cord in the neck. Cervical Spondylosis, Merck Manuals, https://www.merckmanuals.com/home/brain,-spinal-cord,-and-nerve-disorders/spinal-cord-disorders/cervical-spondylosis (last visited Jun. 3, 2019).

3

determinable severe impairment that significantly limits his/her physical or mental ability to do basic work activities, or the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(a), 416.921(a).

Significantly, the Ninth Circuit has determined that "[t]he mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993). In other words, a medical diagnosis alone does not make an impairment qualify as "severe."

In support of her argument that the ALJ erred in finding that her cervical spondylosis was not severe, Plaintiff raises two challenges. First, Plaintiff takes issue with the ALJ's reliance on the opinions of the state agency reviewing physicians because those opinions (in November 2014 and March 2015) predated her motor vehicle accident occurring in February 2016. According to Plaintiff, the ALJ should have focused on her medical records following her motor vehicle accident which demonstrate that her neck condition worsened. Plaintiff also challenges the ALJ's failure to credit her related "symptoms of pain in the neck, headaches, and paresthesia affecting the left arm and hand that would affect" her ability to perform basic work activities. [Dkt. 16 at 11-13.]

In the decision, the ALJ found insufficient evidence that Plaintiff's "osteoarthritis, rheumatoid arthritis, fibromyalgia, cervical spondylosis, peripheral edema" and related symptoms cause more than a mild limitation in any of the functional areas and were therefore not severe. [AR 19.] Substantial evidence supports the ALJ's determination. *See Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (explaining that impairments are non-severe if they have no more than a minimal effect on a claimant's ability to work).

First, the ALJ did not err in partially relying on the reviewing physicians' opinions because the ALJ reviewed all of the medical evidence related to Plaintiff's neck impairment, which began before her car accident. Prior to Plaintiff's 2016 car accident, the reviewing physicians evaluated the severity of Plaintiff's reported neck

pain and determined that she could complete light work. [AR 101-111.] The ALJ subsequently relied, in part, on these opinions which indicated that despite Plaintiff's complaints of "a lot of neck pain" and "swelling in her neck" [AR 102], Plaintiff's neck pain was not a medically determinable impairment. [AR 106.] However, the ALJ did not end his inquiry there. Rather, the ALJ also evaluated the evidence of Plaintiff's neck pain and related symptoms following her accident, noting that the October 2016 MRI scans of her neck showed "only mild to moderate findings" and no "evidence of herniation, fracture, spinal cord impingement or other significant finding." AR 24. The ALJ thus looked to the overall objective medical evidence in the record when concluding that Plaintiff's neck impairment did not affect her ability to work. This was not error.

Second, the ALJ relied on Plaintiff's admittedly active lifestyle to reject her complaints of a severe neck impairment. Most significantly, the ALJ pointed out that Plaintiff continued to enjoy many of the same strenuous activities even after her 2016 motor vehicle accident. For example, before her car accident, but after her alleged disability onset date, Plaintiff traveled to the Virgin Islands where she spent six days traveling on a sail boat and snorkeling with six other people. [AR 25.] Plaintiff returned to the Virgin Islands for vacation in August 2016—six months after her car accident. Additionally, despite her car accident, Plaintiff also continued to visit her second home in Redding, California around 6-8 times a year. [AR 25.] The ALJ noted that it takes Plaintiff 8 hours by car to travel to Redding, and while there she spends time with her husband and brothers on their family ski boat. [AR 25, 49.] These activities support the ALJ's determination that Plaintiff's neck impairment is not severe.

Regardless, the Court finds that any error would be harmless because the ALJ continued on to the next step to determine whether Plaintiff was disabled and, in doing so, considered all of the Plaintiff's impairments. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account

of an error that is harmless"). Here, because the ALJ found other impairments to be severe at step two, he proceeded to subsequent steps of the sequential disability evaluation process. [AR 23-26.] Then, when crafting Plaintiff's RFC, the ALJ considered the effect of *all* of her alleged limitations. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (any error in failing to find an impairment severe at step two is harmless if the ALJ considers any resulting limitations in assessing a claimant's RFC). Accordingly, the Court finds no prejudicial error at step two.

### B. The ALJ's RFC Determination

In her second issue, Plaintiff argues that the ALJ failed to properly evaluate her hypertension by not incorporating the limitation to low stress work raised by her treating physician, Dr. Steven Tenenbaum. Specifically, Plaintiff contends that despite affording the opinion of Dr. Tenenbaum significant weight, the ALJ failed to incorporate Dr. Tenenbaum's limitation to a low stress work environment due to her high blood pressure and risk for recurrence of stroke. (Dkt. 16 at 14-20).

The record reflects that Plaintiff began treatment for hypertension with Dr. Tenenbaum sometime before April 2013. [AR 806.] On April 22, 2013, Plaintiff reported to Dr. Tenenbaum that her blood pressure "had been better since" she had been off work. [AR 806.] Although thinking about "her boss" and returning to work made Plaintiff's blood pressure and anxiety increase, Dr. Tenenbaum released Plaintiff to return to work half time with a change in boss or department to reduce stress. [AR 806.] In June 2013, Dr. Tenenbaum again opined that Plaintiff could return to work with no restrictions, except Plaintiff needed to be "'under a new manager' because her 'existing manager causes [Plaintiff] anxiety which in turn elevates her blood pressure and puts her at risk for a recurrent stroke.'" [AR 804.] In July 2013, Dr. Tenenbaum again stated that Plaintiff needed to decrease stress due to the effect on her blood pressure. [AR 803.] In September 2013, Dr. Tenenbaum wrote a letter to Plaintiff's employer stating that he was treating Plaintiff for her "labile blood pressure" and had released her to work under

restrictions. [AR 798.] Dr. Tenenbaum noted that he was grateful that "his twenty hour per week restriction was granted but dismayed that a change in department was not." [AR 798.] He recommended that Plaintiff and "Human Resources get together to solve this dilemma in a mutually agreeable fashion." [AR 798.]

In October 2014 and March 2015, the state agency medical consultants reviewed evidence of Plaintiff's impairments, including medical records from Dr. Tenenbaum, and found that Plaintiff lacked any "significant functional limitations" that prevent her from "performing work [she has] done in the past as a/an Senior Manager." [AR 99].

In reaching the RFC determination, the ALJ considered the opinions of Plaintiff's treating physicians and the reviewing physicians who "did not assess significant functional limitations." [AR 24.] The ALJ afforded the records from treating physician Dr. Tenenbaum "significant probative weight" because they were consistent with the minor physical findings throughout the record and were substantiated by his examinations of the Plaintiff. Further, the ALJ noted that Dr. Tenenbaum cleared Plaintiff to return to work as long as she avoided stress. [AR 23.] The ALJ also adopted the opinion of the state agency reviewing physicians, who reviewed some of Dr. Tenenbaum's records, and determined that Plaintiff could perform light work. The ALJ further found those opinions to be consistent with Plaintiff's overall active lifestyle. Accordingly, the ALJ adopted the light work RFC restriction opined by the reviewing physicians. [AR 24.]

To the extent that Plaintiff is contending that the ALJ failed to incorporate a low stress work limitation resulting from Dr. Tenenbaum's recommendation that Plaintiff switch managers/departments, Plaintiff's contention must fail. First, Dr. Tenenbaum did not expressly limit Plaintiff to low stress work, and second, there are no opinions from any medical providers that Plaintiff's high blood pressure limited her abilities to perform light work.

The ALJ determined that Plaintiff retained a RFC to perform light work

except that she must avoid concentrated exposure to hazards such as machinery and heights. [AR 19.] Based on this RFC, the ALJ found that Plaintiff could perform her past relevant work as a quality assurance analyst and a records manager; a finding that does not conflict with the opinion of Dr. Tenenbaum. Like the ALJ, Dr. Tenenbaum also opined that Plaintiff could return to her past relevant work. However, Dr. Tenenbaum took umbrage with the stress caused by Plaintiff's specific supervisor and as a result he recommended that Plaintiff switch supervisors or departments, not positions. Indeed, a rational interpretation of Dr. Tenenbaum's opinion is that Plaintiff's position is low stress work when Plaintiff is supervised by a different manager. Therefore, the Court defers to the ALJ's interpretation of the evidence and thus declines to find that Dr. Tenenbaum's efforts to assist Plaintiff with a personnel accommodation is a functional limitation necessary to her RFC. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner).

Plaintiff additionally argues that, along with the need for low stress work, the ALJ's RFC is erroneous because the ALJ failed to address the functional limitations from her cervical impairment and the effects of her pain, anxiety, high blood pressure and impaired sleep. [Dkt. 16 at 14-19.] Plaintiff's argument is equally unpersuasive.

The ALJ must consider all of the relevant medical opinions as well as the combined effects of all of the plaintiff's impairments, even those that are not "severe." 20 C.F.R. § § 404.1545(a); 416.945(a); *Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir. 2003). "[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ must determine a claimant's limitations on the basis of "all relevant evidence in the record." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Here, the ALJ assessed an RFC with all of the limitations the ALJ found credible and supported by substantial evidence. There was no requirement that the RFC assessment include limitations unsubstantiated by objective medical evidence or based on subjective symptom allegations that were properly discounted. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). Consequently, Plaintiff fails to show the ALJ did not adequately consider her other functional limitations in the RFC determination.

## V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: May 31, 2019

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE